U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAY 22  A 10: 47

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA, )
)
v. ) Case No. 5:12-cr-59-1
)
DYLAN LESTER, )
Defendant. )

**ENTRY ORDER DENYING MR. LESTER'S FOURTH MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE AND DENYING MR. LESTER'S MOTION IN LIMINE**
(Docs. 82 & 85)

On January 15, 2026, Defendant Dylan Lester filed a fourth motion seeking early termination of his term of supervised release (Doc. 82). As in his previous motions, he argues that he is entitled to relief pursuant to 18 U.S.C. § 3583(e)(1) because he "has already completed ninety percent of his supervisory term[,]" and "has met and continues to meet all of the eligibility requirements for early termination as set forth by the Judiciary Committee." (Doc. 82 at 1, 4.) On January 23, 2026, the government filed its opposition. On January 28, 2026, Mr. Lester filed a reply and an undated article entitled "Misconceptions about Crimes of a Sexual Nature" by The Sentencing Project.[1]

On February 3, 2026, the United States Probation Office for the District of Vermont (the "Probation Office") recommended the motion be denied in a memo (the "February 3, 2026 Memo") which was sent to the court, Mr. Lester, and the government. On February 9, 2026, Mr. Lester filed a motion in limine seeking to strike portions of the

---

[1] In the one-page article submitted by Mr. Lester, the author opines that individuals convicted of crimes of a sexual nature often have "trauma histories[,]" claims "sexual recidivism rates are low[,]" and asserts that "[w]hen individuals with this conviction do reoffend, it is typically with a non-[crime of a sexual nature]." (Doc. 84-1 at 1.) The article's author rejects the Supreme Court's and in particular Justice Kennedy's description of the recidivism rate for untreated sexually-based offenses "to be as high as 80% . . . a frightening and high risk of recidivism." *Id.* (internal quotation marks omitted) (ellipses in original).

February 3, 2026 Memo. (Doc. 85.) The government did not file an opposition to the motion in limine.

Mr. Lester is self-represented. The government is represented by Assistant United States Attorney Eugenia A.P. Cowles.

## I.    Factual and Procedural Background.

On September 13, 2012, Mr. Lester pleaded guilty to one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(4)(B). As recounted in the Presentence Report ("PSR"), which the court adopted at the January 7, 2013 sentencing hearing as its findings of fact, Mr. Lester's offense involved a prepubescent minor or a minor who had not attained the age of twelve and involved over 600 images, including material that portrayed sadistic or masochistic conduct or other depictions of violence. The PSR found he had offered to share child pornography with others "on at least six different occasions[.]" The court further found that he distributed child pornography and used a computer or interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material.

The PSR records Mr. Lester admitting that he had viewed child pornography "to include children under the ages of three and five years old"; that he had a collection of pornography of "maybe ten or twelve thousand" images with approximately ten percent of that being child pornography; that he collects "every type of pornography"; that he was the subject of a prior child pornography investigation when he was seventeen that was not prosecuted in federal court, which alleged that he possessed "178 video files and 759 still images depicting child pornography[,]" and which was referred for adjudication in the Vermont state courts; and that he compared his situation to smoking cigarettes, stating "you can quit, but once you start again, and get back into it, you can't stop." As mitigating factors, the court acknowledged that Mr. Lester demonstrated an acceptance of responsibility for his offense and had no criminal history points.

Based on the foregoing, the court determined that Mr. Lester's offense level was 30 and his criminal history was category I, resulting in an advisory Sentencing Guidelines range of 97 to 120 months' imprisonment. His advisory supervised release term was five

2

years to life. The court sentenced Mr. Lester to a below-Guidelines term of imprisonment of 65 months, followed by a 10-year term of supervised release.

On December 13, 2016, Mr. Lester was released from the custody of the Bureau of Prisons and began his term of supervised release. On October 18, 2021, the Probation Office filed a petition alleging that Mr. Lester had violated five conditions of supervised release by: (1) providing false written statements from September through December of 2020 and from January through July of 2021, in violation of 18 U.S.C. § 1001; (2) being untruthful on multiple occasions from September 10, 2020 through October 5, 2021, regarding whether he accessed the internet on any device which the Probation Office was unaware of; (3) failing to provide the Probation Office with a complete inventory of computers he used from September 1, 2020 through October 5, 2021; (4) using a computer to access the internet from September 1, 2020 through October 5, 2021, without having a computer use plan approved by a treatment provider and/or a probation officer; and (5) viewing and possessing sexually explicit conduct involving adults from August 1, 2021 through October 4, 2021.

On May 10, 2022, the court held a revocation hearing at which Mr. Lester admitted the violations. Because his conduct "was not a single or isolated incident of non-compliance with some of the violation conduct spanning approximately twelve months[,]" the court revoked his term of supervised release and sentenced him to three months' imprisonment followed by reimposition of the remainder of his term of supervised release. (February 3, 2026 Memo at 1.)

On November 30, 2022, Mr. Lester was released from custody. Approximately a week later, on December 8, 2022, Mr. Lester filed his first motion for early termination of supervised release. The government opposed the motion "[b]ecause [Mr.] Lester ha[d] not demonstrated an ability to comply with the terms of supervised release[.]" (Doc. 63 at 2.) On April 20, 2023, the court held a hearing and denied the motion on the record.

Approximately seven months later, Mr. Lester filed a second motion for early termination of supervised release, wherein he argued that he had satisfied "all the factors set forth for early termination[.]" (Doc. 69 at 2.) After consideration of the factors in 18

3

U.S.C. § 3553(a) and the applicable policy statements, the court denied the second motion without a hearing in April of 2024 based on Mr. Lester's "limited period of compliance[.]" (Doc. 75 at 6.) On January 14, 2025, Mr. Lester filed a third motion for early termination of supervised release, which the government opposed. He made substantially similar arguments as he did in his previous motions. The court denied the third motion on June 24, 2025, because "[n]otwithstanding a significant period of incarceration, Mr. Lester violated his supervision conditions in material and numerous ways and was dishonest about doing so." (Doc. 79 at 5.)[2] The court observed that "[w]hen the court imposed a below-Guidelines sentence followed by a substantial period of supervised release, it recognized the threat to vulnerable victims if Mr. Lester resumed criminal activity and committed a similar offense." *Id.* The court also addressed the importance of supervision in order to maintain public safety while acknowledging the extended duration of his supervised release "offset a non-Guidelines sentence of incarceration by placing the majority of Mr. Lester's supervision in the community rather than in a correctional facility." *Id.*

Two days later, Mr. Lester filed a motion for reconsideration, which the court denied by text Order on June 30, 2025:

> Defendant raised the same arguments previously except for his complaint that the court erred in imposing less incarceration and more supervised release as part of its no greater than necessary sentence required by 18 U.S.C. § 3553(a). Defendant is correct that his original sentence is not at issue, only his term of supervised release.

(Doc. 81.)

After the pending motion for early termination became ripe, on February 9, 2026, Mr. Lester filed a motion in limine and argued the court cannot consider a portion of the February 3, 2026 Memo. His term of supervised release is set to expire on December 12, 2026.

---

[2] Mr. Lester conceded that he "possessed and used in secret for a period of twelve months" a smartphone without permission, although he further contended that "there [was] no evidence to suggest that [he] used his phone for any unlawful purpose and as such [it] should be considered a demonstration of lawful self-management." (Doc. 76 at 3.)

4

**II.    Conclusions of Law and Analysis.**

**A.    Whether the Court Should Disregard the February 3, 2026 Memo.**

In his motion in limine, Mr. Lester argues the February 3, 2026 Memo is flawed

for the following reasons:

> **I.)** As stated in previous arguments, the November 1, 2025 updated Federal
> Sentencing Guidelines were intended to focus on the individual, not the
> crime. The Probation Office asserts that the [c]ourt should deny Mr.
> Lester's Motion based on his crime alone, this assertion runs contrary to the
> updated Judicial Policy that a denial should be based on the conduct of the
> individual, Mr. Cowher's status report regarding Mr. Lester['s] conduct
> over the last year clearly shows that Mr. Lester meets all the criteria set
> forth in the Guide to Judicial Policy 360.20(e) [] (as written at the time of
> Mr. Lester's sentencing) and therefore warrants a presumption in favor of
> early termination.

> **II.)** As a Supervising Officer, Mr. Cowher works as an agent of the
> [c]ourts, it is his duty to observe those under his watch and to report their
> conduct and misconduct to the [c]ourts as he deems fit. When asked
> directly by the [c]ourt if someone under his watch should be considered for
> early termination, Mr. Cowher should have the absolute freedom to express
> his opinion, however, as noted by the [c]ourt, the Guide to Judicial Policy
> notes that probation officers [should] not recommend persons for early
> termination who have an identified higher risk to the community. Without
> further corroborating evidence, this [c]ourt cannot be certain that Mr.
> Cowher's recommendation that this motion be denied is that of his own or
> simply a following of office protocol based on that Judicial Policy. If the
> latter is true, then Mr. Cowher would have no other choice than to
> recommend denial or possibly risk his employment, which technically
> brings the statement to the legal threshold of coercion, and therefore
> inadmissible as evidence[.]

(Doc. 85 at 1) (italics omitted). Mr. Lester argues the "[r]ecommendation of denial was

based on the crime, not the conduct of the individual [and on its] face (without further

evidence) the recommendation of denial was made in accordance with policy, not by [the

Probation Officer] personally." *Id.* at 2.

Contrary to Mr. Lester's assertion, the Probation Officer's recommendation was

not based solely on the Guide to Judiciary Policy. The Probation Officer in this case has

supervised Mr. Lester since December of 2016, with the exception of the three months he

spent in custody in 2022, for a period of approximately nine years. Although the

frequency of face-to-face contact has varied over the years, the Probation Officer currently has in-person contact with Mr. Lester every two to three months. The Probation Officer has therefore had ample opportunity to observe Mr. Lester.

In the February 3, 2026 Memo, the Probation Officer acknowledges Mr. Lester's successes as well as the criteria from the Judiciary Policy which militate against granting the relief he seeks. The court finds the February 3, 2026 Memo to be a balanced assessment of Mr. Lester's performance over the course of his supervised release and the relevant legal factors the court must consider. It is the court, not the Probation Officer, who ultimately decides whether early termination should be granted. In light of the record in this case, the motion in limine is DENIED.

**B.    Whether the Court Should Grant Early Termination of Mr. Lester's Supervised Release.**

Mr. Lester argues that the 2025 amendment to the United States Sentencing Guidelines changed the criteria for analyzing whether to grant an early termination request. He contends "the scope and purpose of these specific changes was to focus on the individual, not the crime and to streamline Early Release petitioners and approve the requests of those that meet (not exceed or excel) the Judicial Standards that warrant such approval[.]" (Doc. 84 at 1.)

After considering the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), and pursuant to the Federal Rules of Criminal Procedure, the court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release[] . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]" 18 U.S.C. § 3583(e)(1); *see also* U.S.S.G. § 5D1.4(b) ("Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is

6

warranted by the conduct of the defendant and in the interest of justice.") (citing 18 U.S.C. § 3583(e)(1)). The § 3553 factors to be considered include:

> (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);
>
> (ii) the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D);
>
> (iii) the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* § 3553(a)(4);
>
> (iv) "any pertinent policy statement issued by the Sentencing Commission," *id.* § 3553(a)(5); and
>
> (v) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id.* § 3553(a)(6).

*United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). Pursuant to 18 U.S.C. § 3156(a)(4)(C), Mr. Lester's underlying offense is considered a "crime of violence." *See also United States v. Bonczek*, 2009 WL 2924220, at *1 (S.D.N.Y. Sept. 8, 2009) ("Possession and receipt of child pornography are, by definition, crimes of violence.").

The Historical Notes to the 2025 Addition of U.S.S.G. Part D of Chapter Five "emphasiz[e] that supervised release is intended to ease a defendant's transition into the community, provide needed rehabilitation, and promote public safety." The Notes "underscore[] the authority of courts, in consultation with the probation officer, to reassess supervised release decisions after a defendant's release from imprisonment, including decisions about the length and conditions of supervision." U.S.S.G. § 5D1.4.

Early discharge is appropriate to "account for new or unforeseen circumstances" not contemplated at the initial imposition of supervised release. *See Lussier*, 104 F.3d at 36. Changed circumstances justifying early termination include a defendant's exceptionally good behavior that makes the previously imposed term of supervised release "either too harsh or inappropriately tailored to serve the general punishment goals

7

of § 3553(a)." *Id.* However, "compliance with the terms of a defendant's supervision, by itself, does not entitle a defendant" to modification. *United States v. Black*, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013). "[T]he determination of early release is a discretionary decision made by the district court." *United States v. Sheckley*, 129 F.3d 114, 114 (2d Cir. 1997) (unpublished opinion); *see also United States v. Trotter*, 321 F. Supp. 3d 337, 359 (E.D.N.Y. 2018) (same).

The Guide to Judiciary Policy § 360.20(a) notes that, under 18 U.S.C. § 3583(e)(1), the court may terminate a term of supervised release in a felony case after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of the offender and is in the interest of justice. That section advises that probation officers not recommend persons for early termination who have an identified higher risk to community safety. It indicates that, after eighteen months of supervision have elapsed, there is a presumption in favor of recommending early termination for higher risk persons who meet the following criteria:

> (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) **or has not committed a sex offense** or engaged in terrorism;
>
> (2) **The person presents no identified risk of harm to the public or victims**;
>
> (3) The person is free from any court-reported violations over a 12-month period;
>
> (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
>
> (5) The person is in substantial compliance with all conditions of supervision; and
>
> (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

Guide to Judiciary Policy § 360.20(c) (emphasis supplied).

In the commentary to U.S.S.G. § 5D1.4, the Sentencing Commission offered a non-exhaustive list of factors that sentencing courts "may wish to consider":

(i) **any history of court-reported violations over the term of supervision;**

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) **whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense**, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4, comment n.1(B) (emphasis supplied); *see also* Doc. 83 at 3-4 ("The application notes to new section 5D1.4 reiterate that the [c]ourt should consider the defendant's history of violations and public safety among key factors in determining whether to grant early termination for a particular defendant.").

To his credit, Mr. Lester has not violated the terms of his supervised release since being released from custody after a revocation proceeding in November of 2022. The government concedes that "with each renewed motion [for early termination of supervised release], [Mr.] Lester can claim a slightly longer period of compliance with th[ese] release conditions[.]" (Doc. 83 at 3.) He thus satisfies one of the criteria of § 360.20(c).

Mr. Lester further asserts that he "has been living in his community now for over 9 years and has not shown any cause or reason to be consider[ed] a danger to any person(s)[.]" (Doc. 84 at 1.) The Probation Office confirms that Mr. Lester continues to have a stable residence, local family support, and long-standing self-employment. In addition, the Probation Office reports that Mr. Lester was found truthful in his responses

to a polygraph in December of 2025. He has, however, only been living in the community for approximately three and a half years without a supervised release violation. His prior violations were serious, and the instant crime was not the first investigation of his possession of child pornography. Both investigations revealed an extensive collection. After the 2004 investigation, Mr. Lester was aware of the potential consequences of continuing to access child pornography and yet he continued to do so, likening it to an addiction he needed to keep at bay.

Based on an "individualized assessment of the need for ongoing supervision," U.S.S.G. § 5D1.4, the court concludes Mr. Lester does not satisfy the criteria of the Guide to Judiciary Policy § 360.20(c) and U.S.S.G. § 5D1.4 in two respects. Although Mr. Lester has complied with the terms of his supervised release since November of 2022, the Probation Office and the government continue to oppose early termination because his underlying offense, possession of child pornography, is a sex offense.[3] *See* Doc. 83 at 3 (arguing Mr. Lester "remains a sex offender and a danger to the community").

As previously recognized, Mr. Lester's below-Guidelines sentence and substantial period of supervised release with stringent conditions is based on the court's assessment of the threat he poses to vulnerable victims if he resumed criminal activity and committed a similar offense. Mr. Lester violated his supervision conditions in material and numerous

---

[3] *See United States v. Elefant*, 2026 WL 35256, at *2 (S.D.N.Y. Jan. 6, 2026) ("Guided by the section 3553(a) factors identified in section 3583(e) as well as section 5D1.4 of the U.S. Sentencing Guidelines and its accompanying application notes, the [c]ourt finds that early termination of supervised release is not warranted by [defendant's] conduct or in the interest of justice."); *United States v. Mejia*, 2025 WL 3779083, at *2-3 (S.D.N.Y. Dec. 30, 2025) (considering U.S.S.G. § 5D1.4, comment n.1(B) and denying motion for early termination of supervised release "given the specifics of [defendant's] offenses of conviction" and "the seriousness of the underlying criminal conduct" even though defendant "has complied with the conditions of his supervised release, including maintaining a stable job and residence; he appears to lawfully self-manage; and he is engaging in prosocial activities. However, compliance of this type is expected of everyone on supervision"); *United States v. Gonzalez*, 2025 WL 3274491, at *3 (S.D.N.Y. Nov. 25, 2025) (denying motion for early termination of supervised release after consideration of applicable facts and the application note to § 5D1.4(b) based on the seriousness of the underlying offense, the fact that defendant committed the same offense more than once, and the lack of time served on supervised release).

ways and was then untruthful about his conduct. Although Mr. Lester has achieved a period of compliance, "full compliance with the terms of supervised release is what is expected of him" and generally "does not warrant early termination." *United States v. Rasco*, 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000). In addition, Mr. Lester has not demonstrated "that the conditions of [his] supervised release have imposed unusual burdens on him or otherwise interfered with his ability to adjust to society." *United States v. Mejia*, 2025 WL 3779083, at *3 (S.D.N.Y. Dec. 30, 2025).

Mr. Lester's progress to date is laudable and reflects his efforts to self-rehabilitate. Nonetheless, after considering the statutory factors, the Guide to Judiciary Policy, and U.S.S.G. § 5D1.4, and in making an individualized assessment of the facts and circumstances of Mr. Lester's case, the court concludes that early termination of supervised release is not warranted. *See United States v. Fernandez*, 2025 WL 3687434, at *1 (S.D.N.Y. Dec. 19, 2025) (citing *United States v. Bastien*, 111 F. Supp. 3d 315, 321 (E.D.N.Y. 2015)) ("Early termination is not 'warranted as a matter of course,' and decisions regarding termination of supervised release are within the discretion of the district court.").

## CONCLUSION

For the foregoing reasons, the court hereby DENIES Mr. Lester's motion for early termination of supervised release (Doc. 82) and DENIES Mr. Lester's motion in limine (Doc. 85).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22ⁿᵈ day of May, 2026.

Christina Reiss, Chief Judge
United States District Court